Jon B. Eisenberg, Esquire [S.B. 88278]
Law Office of Jon B. Eisenberg
509 Tucker Street
Healdsburg, CA 95448-4428
Telephone: (707) 395-0111
Email:  jon@eisenbergappeals.com

Alan R. Kabat (*pro hac vice*)
Bernabei & Kabat, PLLC
1400 - 16th Street, N.W., Suite 500
Washington, D.C.  20036-2223
tel. (202) 745-1942 (ext. 242)
fax (202) 745-2627
email:  Kabat@BernabeiPLLC.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

LARRY G. PHILPOT,

Plaintiff,

vs.

ALTERNET MEDIA, INC.,

Defendant.

No. 3:18-cv-04479-TSH

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**

Date:        November 1, 2018
Time:        10:00 a.m.
Courtroom: D, 15th Floor
Judge:       Hon. Thomas S. Hixson

1

## Table of Contents

2

I.      Notice of Motion      .      .      .      .      .      .      .      .      1

3

II.     Statement of the Issues to be Decided      .      .      .      .      .      1

4

III.    Statement of Facts and Procedural Background      .      .      .      .      2

5

IV.     Standard of Review      .      .      .      .      .      .      .      .      5

6

V.      The Copyright Act      .      .      .      .      .      .      .      .      5

7

VI.     Fair Use Is an Absolute Bar to Plaintiff's Copyright Infringement Claim      .      7

8

        A.      The Transformative Nature of Alternet's Use of the Nelson Photograph      8

9

        B.      Plaintiff's Copyrighted Work Was Already Published      .      .      11

10

        C.      The Reproduction of Plaintiff's Work for a Different Purpose Is Justified      12

11

        D.      Alternet's Use has no Effect on the Market for the Nelson Photograph      12

12

VII.    Plaintiff Cannot State his Digital Millennium Copyright Act Claim      .      15

13

VIII.   Conclusion      .      .      .      .      .      .      .      .      .      18

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

**Table of Authorities**

2

**Cases**

3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)  .      .      .      .      .      .      .      5

*Baker v. Marlo*,
    CV 16-02313 RGK, 2016 WL 10678074 (C.D. Cal. Aug. 8, 2016) .    .    14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)  .      .      .      .      .      .      .      5

\* *Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)  .      .      .      .      .      .      6, 8, 13

*Cobbler Nevada, LLC v. Gonzales*,
    No. 17-35041, __ F.3d __, 2018 WL 4055766 (9th Cir. Aug. 27, 2018)  .    5

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997)  .      .      .      .      .      11

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985)  .      .      .      .      .      .      .      11

*Harris v. County of Orange*,
    682 F.3d 1126 (9th Cir. 2012)  .      .      .      .      .      3

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018)  .      .      .      .      .      5, 15

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003)  .      .      .      .      8, 9, 11, 13

*Leadsinger, Inc. v. BMG Music Publ'g*,
    429 F. Supp. 2d 1190 (C.D. Cal. 2005), *aff'd*, 512 F.3d 522 (9th Cir. 2008)    7

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003)  .      .      .      .      6, 7, 11, 12

*Morgan v. Associated Press*,
    No. 15-cv-03341-CBM-JEM, 2016 WL 6953433 (C.D. Cal. Mar. 16, 2016)    17

*Núñez v. Caribbean Intl. News Corp.*,
    235 F.3d 18 (1st Cir. 2000)  .      .      .      .      9, 12, 13

\* *Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007)  .      .      .      .      7, 8-9, 11, 13

\* *Philpot v. Media Research Center, Inc.*,
    279 F. Supp. 3d 708 (E.D. Va. 2018)  .      .      3, 9-10, 12, 13-14

*Philpot v. Music Times, LLC*,
    No. 1:14-cv-01978, Order (ECF 11) (S.D. Ind. Sept. 17, 2015)  .    .    2-3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

1

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,*
  442 F.3d 741 (9th Cir. 2006) . . . . . . . . 3

2

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417 (1984) . . . . . . . . . 6

3

4

*Spinelli v. National Football League,*
  No. 17-0673-cv, __ F.3d __, 2018 WL 4309351 (2d Cir. Sept. 11, 2018) . 17

5

6

* *Stevens v. Corelogic, Inc.,*
  899 F.3d 666 (9th Cir. 2018) . . . . . . . 16-17

7

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.,*
  446 F. Supp. 2d 1164 (E.D. Cal. 2006) . . . . . 14

8

9

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,*
  971 F.2d 244 (9th Cir. 1992) . . . . . . . 3

10

11

**Constitution, Statutes, and Rules**

12

U.S. Const. Art. I, § 8, cl. 8 . . . . . . . . 5-6

13

17 U.S.C. § 106 . . . . . . . . . 6, 14

14

17 U.S.C. § 107 . . . . . . . . 1, 6-7, 15

15

17 U.S.C. § 501 . . . . . . . . . 15

16

Digital Millennium Copyright Act, 17 U.S.C. §§ 1202 and 1203 . . . 1, 15-17

Rule 12(b)(6), Fed. R. Civ. P. . . . . . . . *passim*

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   Notice of Motion.

PLEASE TAKE NOTICE that on November 1, 2018, at 10:00 a.m., before the Honorable

Theodore S. Hixson, U.S. Magistrate Judge, in Courtroom D, 15th Floor, Defendant Alternet

Media, Inc. ("Alternet") will and hereby does move the Court for an order dismissing Plaintiff

Larry G. Philpot's Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.  This motion is based on

this Notice of Motion and Memorandum in Support, the Declaration of Alan R. Kabat and

exhibits thereto, and the operative Complaint in this action.

As set forth below, dismissal of the copyright infringement claim for failure to state a

claim is warranted since Alternet's use of Mr. Philpot's concert photograph of Willie Nelson – by

adding political commentary – was sufficiently transformative so that the statutory fair use

defense under 17 U.S.C. § 107 precludes Mr. Philpot from stating a claim for which relief can be

granted.  Moreover, Mr. Philpot's prior sworn testimony, given in one of the over 70 copyright

infringement lawsuits that he has filed over the past four years, also precludes him from stating a

claim for which relief can be granted in this case.

Mr. Philpot's claim under the Digital Millennium Copyright Act (DMCA) must also be

dismissed because he failed to plead any plausible facts that Alternet knew that its conduct would

violate the DMCA.

## II.   Statement of the Issues to be Decided.

1.   Has plaintiff stated a plausible claim for which relief can be granted based on the

allegation that Alternet infringed his copyright in the Nelson photograph without

justification under the fair use doctrine, 17 U.S.C. § 107?

2.   Has plaintiff stated a plausible claim for which relief can be granted against

Alternet by alleging that it removed or altered metadata and copyright management

information from the Nelson photograph when it published the photograph, by pleading

plausible facts that Alternet knew that its actions "will induce, enable, facilitate, or

conceal" infringement, as required under 17 U.S.C. §§ 1202 and 1203?

1

### III.   Statement of Facts and Procedural Background.

1.      Alternet "operates an alternative news website at www.alternet.org that publishes original content as well as content from other sources.  The content on the Alternet website is designed to influence its readers' political leanings…"  *See* Compl., at ¶ 7 (ECF 1).

2.      "On October 4, 2009, Mr. Philpot took a photograph of entertainer Willie Nelson in performance at Farm Aid 2009 in Saint Louis, Missouri."  *Id.* at ¶ 8.

3.      "On or about June 3, 2015, Alternet shared a meme of Willie Nelson on its Facebook page.  Alternet used the entire Nelson Photograph for the meme, and added a Willie Nelson quote and the Alternet logo to the photograph."  *Id.* at ¶ 13 & Ex. E (ECF 1-5).

4.      The Alternet posting on Facebook was introduced with the new comment, "We need more values like this," and added the following quotation from Mr. Nelson, superimposed on the Nelson photograph:

> Rednecks, hippies, misfits – we're all the same.  Gay or straight?  So what?  It doesn't matter to me.  We have to be concerned about other people, regardless.  I don't like seeing anybody treated unfairly.  It sticks in my craw.  I hold on to the values from my childhood.

*Id.* at Ex. E (ECF 1-5).

5.      Plaintiff, Larry Philpot, has filed 73 copyright infringement lawsuits in the courts across the country, encompassing 20 judicial districts, including four lawsuits that were transferred from one district to another, resulting in a total of 77 judicial proceedings from August 1, 2014 through September 14, 2018.  *See* Declaration of Alan R. Kabat, at ¶¶ 1-78 (Sept. 19, 2018) (attached and incorporated hereto).

6.      Of those 73 lawsuits, (a) eleven were dismissed by the court pursuant to a motion to dismiss or other dispositive motion; (b) 38 were dismissed with prejudice by Mr. Philpot; (c) three were dismissed without prejudice by Mr. Philpot; (d) two were dismissed pursuant to an offer of judgment; (e) two were resolved through a default judgment (with no indication of any collection on the judgment); and (f) seventeen are still pending.  *Id.*

7.      In *Philpot v. Music Times, LLC*, U.S. District Judge Magnus-Stinson of the

1 Southern District of Indiana issued an order to show cause as to whether the complaint should be

2 dismissed for failure to prosecute.  Judge Magnus-Stinson, in denying plaintiff's motion to

3 reconsider, stated that "Mr. Philpot concedes that … he 'completely overwhelmed himself by

4 filing too many actions, and has been reacting rather than proactively prosecuting the

5 Defendant.'"  *See Philpot v. Music Times, LLC*, No. 1:14-cv-01978, Order, at 1 (ECF 11) (S.D.

6 Ind. Sept. 17, 2015) (quoting plaintiff's motion to reconsider) (attached and incorporated hereto

7 as Exhibit A to Kabat Declaration).[1]

8         8.         In another case, *Philpot v. Media Research Center, Inc.*, 279 F. Supp. 3d 708 (E.D.

9 Va. 2018), U.S. District Judge Ellis of the Eastern District of Virginia specifically relied upon Mr.

10 Philpot's sworn deposition testimony.  Mr. Philpot testified that although he considers himself a

11 "professional" photographer, he has not been hired to do any photography:

12         Q.       Do you do any freelance work photography?

13         A.       I – meaning what?

14         Q.       Someone hires you to go shoot a particular celebrity.

15         A.       No.

16         Q.       Do you do any portrait photography?
         . . . .
17         A.       No.

18 *See* Deposition of Larry G. Philpot, at 26:20–27:7 (Oct. 10, 2017), *Philpot v. Media Research*

19 *Center, Inc.*, No. 1:17-cv-00822 (ECF 26-2) (E.D. Va. Nov. 1, 2017) (excerpts attached and

20 incorporated hereto as Exhibit B to Kabat Declaration).

21         9.         Mr. Philpot also admitted that he was not paid to take these concert photographs,

22 which he took to show the musicians performing in a concert:

23

24         [1] This Court can take judicial notice of filings and decisions in Mr. Philpot's other
copyright infringement lawsuits.  *See, e.g.*, *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th
25 Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including
documents on file in federal or state courts."); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442
26 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters
of public record."); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
27 971 F.2d 244, 248 (9th Cir. 1992) ("However, we may take notice of proceedings in other courts,
both within and without the federal judicial system, if those proceedings have a direct relation to
28 matters at issue.") (citations omitted).

3

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

Q.     Did anyone pay you to take this Chesney photograph?

A.     No.

. . . .

Q.     Okay.  And you took the photograph to show Kenny Chesney in concert, correct?

A.     Yes.

Q.     And no one assigned you to take this photograph in connection with any news report or opinion piece about Kenny Chesney being Pro Life, did they?

A.     No.  I didn't know Kenny Chesney was Pro Life.

Q.     And you didn't take the Chesney photograph to make any commentary on his political positions?

A.     No.  I didn't know his [positions]

*Id.* at 43:7–44:3.

Q.     You didn't take the Chesney photograph to make any commentary on his political beliefs, did you?

A.     No.

*Id.* at 44:21–45:2.

10.    Mr. Philpot also admitted that the only income or earnings he has received from his photographs is through litigation or sending demand letters:

Q.     Has anyone ever paid you money to license the photo – license the Chesney photograph?

A.     Probably, yes.

Q.     Under what circumstances?

A.     Probably under a demand letter.

Q.     Okay.  Prior to a demand letter being sent, has anybody paid you to license the Chesney photograph for use?

A.     No.

*Id.* at 48:10-19.

Q.     Outside of a legal settlement, has anybody ever paid you money to use the Kid Rock photograph?

A.     No.

*Id.* at 77:15-18.

11.    Mr. Philpot also admitted that the only reason for filing his lawsuits was because

4

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

the defendants had not attributed the photograph(s) to him:

> Q.     Of the people that you've filed lawsuits against, or entities – businesses and individuals, let's just put it that way, was the failure to make attribution the only thing that triggered your demand letter?

> A.     Yes.

*Id.* at 50:12-17.

### IV.    Standard of Review.

In order to state a claim and overcome a motion to dismiss, the copyright infringement plaintiff must plead sufficient facts to establish an entitlement to relief:  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Ninth Circuit has held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

The Ninth Circuit recently upheld the dismissal of a copyright infringement action at the motion to dismiss stage, because the plaintiff failed to plead facts showing actual plausibility of entitlement to relief:  "This is a situation 'where a complaint pleads facts that are merely consistent with a defendant's liability … stopping short of the line between possibility and plausibility of entitlement to relief.'"  *Cobbler Nevada, LLC v. Gonzales*, No. 17-35041, __ F.3d __, 2018 WL 4055766, at *3 (9th Cir. Aug. 27, 2018) (quoting *Ashcroft*, 556 U.S. at 678).  Dismissal is required where the "allegations are not 'enough to raise a right to relief above a speculative level.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### V.    The Copyright Act.

The Supreme Court and the Ninth Circuit have long recognized that the Copyright Act does <u>not</u> provide unfettered authority to the copyright owner to control everything that can be done with a published work.  Instead, the Copyright Act, in order to advance the Constitutional mandate, *i.e.*, "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries" (U.S.

1   Const., Art. I, § 8, cl. 8), requires a balancing of the rights of authors with the rights of others to

2   use copyrighted works as a platform for creating new works, *i.e.*, the fair use doctrine.

3       The Supreme Court, in the seminal *Campbell* case, stated that:  "From the infancy of

4   copyright protection, some opportunity for fair use of copyrighted materials has been thought

5   necessary to fulfill copyright's very purpose, 'to promote the Progress of Science and useful

6   Arts.'"  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art.

7   I, § 8, cl. 8).  "This protection has never accorded the copyright owner complete control over all

8   possible uses of his work."  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432

9   (1984) (citations omitted).  Instead, "any individual may reproduce a copyrighted work for a 'fair

10  use;' the copyright owner does not possess the exclusive right to such a use."  *Id.* at 433 (citing 17

11  U.S.C. § 106 and § 107).

12      Thus, as the Ninth Circuit explained, "At its core, the [Copyright] Act seeks to promote

13  the progress of science and art by protecting artistic and scientific works while encouraging the

14  creation of new works."  *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir.

15  2003).  The result is that "… the [Copyright] Act limits the rights of a copyright owner regarding

16  works that build upon, reinterpret, and reconceive existing works."  *Id.* (citing *Campbell*, 510

17  U.S. at 575-77).

18      As a result, Section 107 of the Copyright Act sets forth four factors that are to be used by

19  the courts in determining whether the defendant's alleged infringing conduct is actually protected

20  by the fair use doctrine, thereby precluding the plaintiff from bringing an infringement claim.

21  These four factors are:

22      (1)  the purpose and character of the use, including whether such use is of a
23      commercial nature or is for nonprofit educational purposes;

24      (2)  the nature of the copyrighted work;

25      (3)  the amount and substantiality of the portion used in relation to the copyrighted
     work as a whole; and

26      (4)  the effect of the use upon the potential market for or value of the copyrighted
27   work.

28
                                              6

17 U.S.C. § 107.  This Court can determine the fair use defense at the motion to dismiss stage.  *Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1196 (C.D. Cal. 2005) (holding that the issue of fair use may be adjudicated at the motion to dismiss stage), *aff'd*, 512 F.3d 522 (9th Cir. 2008).

As the Ninth Circuit succinctly held, the "defendant may avoid liability if it can establish that its use of the images is a 'fair use' as set forth in 17 U.S.C. § 107."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007).  More generally, the fair use doctrine is designed to strike a proper balance between the author's rights and the rights of the public to create new works that build upon earlier published works:

> The [fair use] defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product.  "From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose."

*Perfect 10*, 508 F.3d at 1163 (quoting *Campbell*, 510 U.S. at 575).

The statutory factors are not a mechanical checklist, but are to be addressed in a flexible manner:  "To determine whether a work constitutes fair use, we engage in a case-by-case analysis and a flexible balancing of relevant factors.  The factors are 'to be explored, and the results weighed together, in light of the purposes of copyright.'"  *Mattel*, 353 F.3d at 800 (quoting *Campbell*, 510 U.S. at 578).

## VI.   Fair Use Is an Absolute Bar to Plaintiff's Copyright Infringement Claim.

This Court must find that the fair use defense is an absolute bar to Mr. Philpot's copyright infringement claim.  As a matter of law, Alternet's use of the Nelson photograph was sufficiently transformative as to constitute an entirely new use that did <u>not</u> compete with the (non-existent) market for Mr. Philpot's photographs.

Further, Mr. Philpot's prior deposition testimony has confirmed not only that the only "income" he has received from his photography is through demand letters and lawsuits, but also that the only reason he took the photographs was to show the musicians performing in a concert, and not to engage in any political commentary relating to those musicians.

1

**A.    The Transformative Nature of Alternet's Use of the Nelson Photograph.**

2      This Court should find that the first fair use factor – "the purpose and character of the use"

3   – is dispositive and requires finding that Mr. Philpot cannot state a claim for which relief can be

4   granted.  Alternet did <u>not</u> use the Nelson photograph to illustrate a story about Mr. Nelson or

5   about his concerts, which was Mr. Philpot's purpose for taking his concert photographs.  Instead,

6   Alternet used the Nelson photograph to provide political commentary as part of its "alternative

7   news website … [that] is designed to influence its readers' political leanings."  *See* Compl., at ¶ 7

8   (ECF 1).  This transformative use completely supersedes Mr. Philpot's original purpose or object

9   of the Nelson photograph, and thus lies at the heart of the fair use doctrine.

10     The Supreme Court, in *Campbell*, explained that the first fair use factor looks to whether

11  the new work was sufficiently transformative so as to require a finding of fair use:

12
> The central purpose of this investigation is to see … **whether the new work**
> merely "supersedes the objects" of the original creation, or instead **adds**
13
> **something new, with a further purpose or different character, altering the**
> **first with new expression, meaning, or message; it asks, in other words,**
14
> **whether and to what extent the new work is "transformative."**  Although such
> transformative use is not absolutely necessary for a finding of fair use, the goal of
15
> copyright, to promote science and the arts, is generally furthered by the creation of
> transformative works.  **Such works thus lie at the heart of the fair use**
16
> **doctrine's guarantee of breathing space within the confines of copyright, and**
> **the more transformative the new work, the less will be the significance of**
17
> **other factors, like commercialism, that may weigh against a finding of fair**
> **use.**
18

19  *Campbell*, 510 U.S. at 579 (emphasis added) (citations omitted); *accord Mattel*, 353 F.3d at 800

20  (quoting *Campbell*); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003) (same).  In

21  short, as the Ninth Circuit concluded, "The central purpose of this inquiry is to determine whether

22  and to what extent the new work is 'transformative.'"  *Perfect 10*, 508 F.3d at 1164.  Moreover,

23  whether the new work has any commercial value is <u>not</u> dispositive:

24
> The Supreme Court has rejected the proposition that a commercial use of the
> copyrighted material ends the inquiry under this factor. . . . The more
25
> transformative the new work, the less important the other factors, including
> commercialism, become.

26  *Kelly*, 336 F.3d at 818 (citing *Campbell*, 510 U.S. at 579).  Indeed, "even making an exact copy

27  of a work may be transformative so long as the copy serves a different function than the original

28
8

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

1    work." *Perfect 10*, 508 F.3d at 1165 (citing *Kelly*, 336 F.3d at 818-19).

2         For example, the First Circuit, in a decision cited favorably by the Ninth Circuit, held that

3    a newspaper's use of a photograph from a modeling portfolio was transformative, because the

4    photograph was now being used for a news story and not to market the model's services:

5         Rather, what is important here is that plaintiff's photographs were originally
          intended to appear in modeling portfolios, not in the newspaper; the former use,

6         not the latter, motivated the creation of the work.  Thus, by using the photographs
          in conjunction with editorial commentary, El Vocero did not merely "supersede[ ]

7         the objects of the original creation[s]," but instead used the works for "a further
          purpose," giving them a new "meaning, or message." *Campbell*, 510 U.S. at 579.

8         **It is this transformation of the works into news—and not the mere**
          **newsworthiness of the works themselves—that weighs in favor of fair use**

9         under the first factor of § 107.  *See id.* ("central inquiry is whether defendant's use
          is transformative") . . .

10
11   *Núñez v. Caribbean Intl. News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) (emphasis added).  In *Kelly*,

     the Ninth Circuit summarized the significance of the *Núñez* decision:  "By putting a copy of the

12   [modeling portfolio] photograph in the newspaper, the work was transformed into news, creating

13   a new meaning or purpose for the work." *Kelly*, 336 F.3d at 819 (citing *Núñez*, 235 F.3d at 22-

14   23); *accord Perfect 10*, 508 F.3d at 1165 ("the First Circuit has held that the republication of

15   photos taken for a modeling portfolio in a newspaper was transformative because the photos

16   served to inform, as well as entertain").

17        U.S. District Judge Ellis, of the Eastern District of Virginia, recently relied upon the

18   foregoing framework in holding that Mr. Philpot could <u>not</u> bring a copyright infringement claim

19   against the Media Research Center, which had used two of his concert photographs (of the

20   musicians Kenny Chesney and Kid Rock) to advocate for political issues.  *Philpot v. Media*

21   *Research Center, Inc.*, 279 F. Supp. 3d 708 (E.D. Va. 2018).  Judge Ellis found that Mr. Philpot's

22   intended purpose of the photographs was far removed from that of the defendant:

23
24        The undisputed factual record discloses that the "expression," "meaning," and
          "message" of defendant's use of the Photographs here is plainly different from

25        plaintiff's [Philpot's] intended use of the Photographs.  Plaintiff testified that he
          was a professional photographer of musicians and that he took the Chesney and

26        Kid Rock Photographs to depict the musicians in concert.  By contrast, defendant
          used the images for the purposes of news reporting and commentary on issues of

27        public concern – namely, informing citizens about pro-life celebrities and
          conservative celebrities running for public office.

28
                                                    9

*Philpot*, 279 F. Supp. 3d at 715. Judge Ellis relied upon Mr. Philpot's aforementioned deposition testimony, in which Mr. Philpot admitted that (1) he was not paid or assigned to take his concert photos; (2) he did not take the concert photos intending to make any commentary on the musician's political positions; and (3) he does no paid photography of any kind. *See* Ex. B (Philpot Dep.), at 26:20–27:7; 43:7–44:3, 44:21–45:2. In short, Mr. Philpot "admitted that he in no way had this purpose in mind – identifying these celebrities as pro-life or candidates for U.S. Senate – at the time he took the photographs." *Philpot*, 279 F. Supp. 3d at 715. Instead, the defendant's use of the photographs in a political context was transformative, "thereby creating … a 'new expression, meaning, or message.'" *Id.* at 716 (quoting *Campbell*, 510 U.S. at 579).

Judge Ellis recognized that this approach was consistent with those of the First and Ninth Circuits:

> Notably, other circuits have determined that the use of photographs is transformative where, as here, the use serves purposes beyond mere artistic expression, by informing the public about a newsworthy event, providing commentary, or adding other social benefit.

*Philpot*, 279 F. Supp. 3d at 716 (citing *Perfect 10*, 508 F.3d at 1165 and *Núñez*, 235 F.3d at 22-23). It was this drastically different and transformative use of the photographs that required a finding that the alleged infringement was justified under the fair use doctrine:

> Here … **defendant is using the Chesney and Kid Rock Photographs for a purpose completely different from the purpose for which the Photographs were created**, namely to identify certain celebrities as pro-life advocates or potential conservative Senate candidates. . . .

> . . . . Here … plaintiff [Philpot] took the Chesney and Kid Rock Photographs to depict the musicians in concert. Had defendant used the Chesney and Kid Rock Photographs alongside articles about the concerts depicted, then that use might not have been transformative. **But importantly, defendant here used the Photographs in a completely different context**, namely to identify these celebrities as pro-life advocates or conservative candidates for office.

*Id.* at 717 (emphasis added). Judge Ellis thus concluded that "because defendant used the Chesney and Kid Rock Photographs in a new context, to tell new stories about the musicians as pro-life advocates or candidates for office, defendant's use of the Photographs was transformative." *Id.*

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

Here, just as in the *Media Research Center* case, Mr. Philpot took the photograph of Willie Nelson to depict him performing in a concert, while Alternet used that photograph for making a political commentary using the musician's views, consistent with Alternet's intended audience.  Further, Alternet did not merely republish the photograph by itself; Alternet added a caption, "We need more values like this," and superimposed a quotation over the blank space on the right-hand margin of the photograph, containing a political statement from Mr. Nelson about treating people fairly.  *See* Compl., Ex. E (ECF 1-5).

Therefore, this Court should find that Alternet's use of the Nelson photograph was sufficiently transformative, reflecting an entirely new use and purpose, so that the first fair use factor weighs decisively in Alternet's favor.

**B.     Plaintiff's Copyrighted Work Was Already Published.**

The second fair use factor – "the nature of the copyrighted work" – focuses on whether the plaintiff's work was already published and hence available to the public.  The Ninth Circuit has consistently held that where, as here, a work is already published, this fair use factor is likely to be satisfied, since the right to decide where and how to publish a work is exhausted once the author has published the work:  "Because this right encompasses 'the choices of when, where, and in what form first to publish a work,' an author exercises and exhausts this one-time right by publishing the work in any medium."  *Perfect 10*, 508 F.3d at 1167 (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564 (1985)).  The Ninth Circuit, in *Kelly*, recognized that "Published works are more likely to qualify as fair use since the first appearance of the artist's expression has already occurred."  *Kelly*, 336 F.3d at 820 (citing *Harper & Row*, 471 U.S. at 564).

This factor is probably the least important in the fair use analysis:  "As we have recognized in the past, 'this [nature of the copyrighted work] factor typically has not been terribly significant in the overall fair use balancing.'"  *Mattel*, 353 F.3d at 803 (quoting *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997)).

Judge Ellis, in dismissing one of Mr. Philpot's many lawsuits, similarly stated with

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

respect to the second fair use factor: "To begin with, where, as here, the copyrighted work is published, the fair use is broader in scope." *Philpot*, 279 F. Supp. 3d at 718.

Here, Mr. Philpot specifically alleged that his concert photograph of Willie Nelson was published as early as October 4, 2009. *See* Compl., at ¶ 2. Mr. Philpot also alleged that Alternet did not publish that photograph (with a caption and a quotation from Nelson) until June 3, 2015, over six years later. *Id.* at ¶ 8. Thus, Mr. Philpot's photograph was published (on his and other websites) years before Alternet published its transformed version of that photograph.

Under *Perfect 10* and *Kelly*, the fact that Mr. Philpot's photograph was already published also weighs in favor of finding that the second fair use factor cuts strongly in favor of Alternet.

**C.  The Reproduction of Plaintiff's Work for a Different Purpose Is Justified.**

The third factor also weighs strongly in favor of Alternet, because the purpose of the two photographs differs substantially. The Ninth Circuit recognized that straightforward principle: "We have, however, held that entire verbatim reproductions are justifiable where the purpose of the work differs from the original." *Mattel*, 353 F.3d at 803 n.8 (citing *Kelly*, 336 F.3d at 821). The First Circuit similarly recognized that even copying an entire photograph was of little bearing: "In this case, El Vocero admittedly copied the entire picture; however, to copy any less than that would have made the picture useless to the story. As a result, like the district court, we count this factor as of little consequence to our analysis." *Núñez*, 235 F.3d at 24.

Here, Mr. Philpot has admitted that his photographs were taken for one purpose – to show musicians performing at concerts – while the subsequent use by others of his photographs for political commentary was not his purpose for taking the photographs, and, indeed, he did not even know the political views of these musicians.

Therefore, this Court should follow the Ninth Circuit in *Mattel* (and the First Circuit in *Núñez*), and find that the third factor provides little or no support for Mr. Philpot's ability to state a claim upon which relief can be granted.

**D.  Alternet's Use Has no Effect on the Market for the Nelson Photograph.**

Finally, this Court should find that the fourth fair use factor – "the effect of the use upon

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

1   the potential market for or value of the copyrighted work" – also weighs strongly in Alternet's

2   favor.  As a threshold matter, where, as here, "the second use is transformative, market

3   substitution is at least less certain, and market harm may not be so readily inferred."  *Campbell*,

4   510 U.S. at 591; *accord Perfect 10*, 508 F.3d at 1168 (quoting *Campbell*).  Further, the "market

5   for potential derivative uses includes only those that creators of original works would in general

6   develop or license others to develop."  *Campbell*, 510 U.S. at 592.  The Ninth Circuit explained

7   that a "transformative work is less likely to have an adverse impact on the market of the original

8   than a work that merely supersedes the copyrighted work."  *Kelly*, 336 F.3d at 821 (citing

9   *Campbell*, 510 U.S. at 591).

10   Here, Mr. Philpot pled that Alternet's use of the Nelson photograph was <u>not</u> the same as

11   his own use, and he has admitted in sworn testimony that he only took these photographs to

12   illustrate the musicians while performing, not to engage in any political commentary, so he could

13   not have contemplated other uses for his photos.  *See, e.g.*, *Núñez*, 235 F.3d at 25 ("There is no

14   evidence, however, that such a market ever existed in this case.  Núñez does not suggest that he

15   ever tried to sell portfolio photographs to newspapers . . .").

16   Moreover, Mr. Philpot has also admitted in sworn testimony that the only income he has

17   ever earned from his photography is through demand letters and litigation:  "The only

18   remuneration plaintiff [Philpot] has ever received for the Chesney Photograph is the undisclosed

19   sums plaintiff received in connection with demand letters plaintiff sent to alleged infringers."

20   *Philpot*, 279 F. Supp. 3d at 711.  "The only remuneration plaintiff [Philpot] has ever received for

21   the Kid Rock Photograph is the undisclosed sums plaintiff received in connection with demand

22   letters plaintiff sent to alleged infringers."  *Id.* at 712.  Thus, Judge Ellis concluded that the fourth

23   fair use factor also required dismissal of Mr. Philpot's copyright infringement lawsuit:

24
> This factor, applied here, weighs in favor of a fair use finding because there is no
> showing on this record of any impact on any economic market for the Chesney or
25   Kid Rock Photographs. . . . **Indeed, on this record, there is no economic market
> for the Photographs.**  Plaintiff [Philpot] admits that he posted his photographs on
26   Wikimedia for use by others for free, rather than selling them for a profit, because
> his purpose in taking the Chesney and Kid Rock Photographs was to gain greater
27   fame, not to make money.  **Indeed, plaintiff admits that he has received no**

28

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

**remuneration for use of the Chesney and Kid Rock Photographs outside of the litigation context.**

*Philpot*, 279 F. Supp. 3d at 719 (emphasis added) (citing Philpot Dep. at 48:10–50:9, 77:15-18).

Indeed, the so-called "litigation market" is <u>not</u> a legitimate market under the Copyright Act for

purposes of the fair use analysis:

> Congress plainly did not intend to preserve a market for copyright litigation when
> it enacted the Copyright Act so any impairment of the litigation market for
> plaintiff's Chesney and Kid Rock Photographs has no bearing on this analysis.

*Id.* at 719 n.13.  Here, too, this Court should similarly find that the fourth fair use factor also

weighs strongly in Alternet's favor, given that the only market for Mr. Philpot's photographs is

not cognizable under the Copyright Act.

Mr. Philpot has also alleged that Alternet used the photograph "without … attribution"

and "without attributing the photograph to Mr. Philpot."  *See* Compl., at ¶¶ 13, 20.  However, this

"right of attribution" is <u>not</u> a cognizable right under the Copyright Act, as other district courts in

the Ninth Circuit have held:  "However, it is well established that the right to attribution is not a

protected right under the Copyright Act."  *UMG Recordings, Inc. v. Disco Azteca Distributors,*

*Inc.*, 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006) (citations omitted); *accord Baker v. Marlo*, CV

16-02313 RGK, 2016 WL 10678074, at *2 (C.D. Cal. Aug. 8, 2016) (quoting *UMG Recordings*).

This is because the "right to be credited is not one of these [exclusive] rights [in Section 106].

Thus, the failure to credit a copyright owner is not an infringement …"  *UMG Recordings*, 446 F.

Supp. 2d at 1178.  Judge Ellis similarly rejected Mr. Philpot's efforts to argue that the failure to

attribute the Chesney and Kid Rock photographs to him caused any harm relevant to the fourth

fair use factor:

> As with the derivative market for criticism, the Copyright Act does not provide an
> exclusive right to attribution.  Accordingly, harm caused by lack of attribution is
> not generally cognizable under the Copyright Act and should not be considered in
> evaluating the fourth fair use factor.

*Philpot*, 279 F. Supp. 3d at 720.

Therefore, this Court should grant Alternet's motion to dismiss for failure to state a claim,

because Mr. Philpot cannot plead any facts that would show a plausibility of entitlement to relief,

14

as opposed to a speculative possibility of relief.  *Twombly* and *Iqbal*, as applied by the Ninth

Circuit to copyright infringement and other cases, requires that the plaintiff, to overcome a Rule

12(b)(6) motion, must be able to "state a claim to relief that is plausible on its face."  *Hicks*, 897

F.3d at 1117 (quoting *Iqbal*, 556 U.S. at 678).  Here, Mr. Philpot cannot possibly plead any facts

that would allow him any relief for copyright infringement pursuant to 17 U.S.C. § 501, since the

statutory fair use defense, 17 U.S.C. § 107, is an absolute bar to any recovery.  All four of the fair

use factors weigh in Alternet's favor, particularly the most important first factor (Alternet's use

was a transformative use for an entirely different purpose, *i.e.*, political commentary, and not Mr.

Philpot's purpose of illustrating musicians performing at concerts), and the fourth factor

(Alternet's use will have no effect on the non-existent "market" for Mr. Philpot's photos, given

that the only economic value to him of his photographs is the so-called "litigation market," and

the right of attribution has no bearing on the fourth factor).  The other two factors also weigh in

Alternet's favor, since Mr. Philpot's work was published for at least five years before Alternet

made its transformative use, and it was necessary for Alternet to use the entire Nelson photograph

in order to convey any meaning.

Dismissal with prejudice of the copyright infringement claim (First Claim for Relief) is

warranted.  Any attempt to amend the complaint would be futile, in light of Mr. Philpot's prior

sworn testimony in which he admitted that there was no real market for his works and that he

only took his photographs to show the musicians in performance since he did not know their

political leanings and was not taking the photographs for any news-related purpose.

**VII.   Plaintiff Cannot State his Digital Millennium Copyright Act Claim.**

Finally, this Court should dismiss Mr. Philpot's claim under the Digital Millennium

Copyright Act ("DMCA"), 17 U.S.C. §§ 1202 and 1203, for failure to state a claim.

As a threshold matter, Mr. Philpot pled, in a conclusory manner, that Alternet violated the

DMCA "by intentionally removing or altering the Nelson Photograph's identifying metadata and

copyright information … and/or by distributing the Nelson Photograph with the identifying

metadata and copyright management information removed and/or altered…"  *See* Compl., at ¶ 26.

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

1  However, this merely parrots the statutory language, and does not plead any specific facts

2  showing that Alternet *knew* that its conduct would violate the DMCA.  The Ninth Circuit very

3  recently upheld the grant of judgment to the defendant in a lawsuit brought by several real estate

4  photographers who alleged that a software developer had violated the DMCA when it used the

5  photographers' copyrighted photographs of houses for sale without permission.  *Stevens v.*

6  *Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018).[2]

7       In *Stevens*, the Ninth Circuit explained that the DMCA's provisions require pleading, and

8  proving that the defendant *knew* that his conduct would lead to infringement by others:

9       Both provisions [17 U.S.C. §§ 1202(b)(1) and 1202(b)(3)] thus require the
    defendant to possess the mental state of knowing, or having a reasonable basis to
10   know, that his actions "will induce, enable, facilitate, or conceal" infringement.

11  *Stevens*, 899 F.3d at 673 (quoting 17 U.S.C. § 1202(b)(1), (3)).

12      Thus, it is not enough to speculate that "someone *might* be able to use their photographs

13  undetected," since "that assertion rests on no affirmative evidence at all; it simply identifies a

14  general possibility that exists whenever CMI [copyright management information] is removed."

15  *Id.*  Instead, as the Ninth Circuit explained, "To avoid superfluity, the mental state requirement in

16  Section 1202(b) must have a more specific application than the universal possibility of

17  encouraging infringement; specific allegations as to how identifiable infringements 'will' be

18  affected are necessary.  *Id.* at 674.

19      Therefore, in order to plead (and ultimately prove) a DMCA claim, the plaintiff must

20  plead that the defendant knew its conduct would violate the DMCA, typically by pleading

21  specific facts showing that the defendant had done so in the past, or had a general "modus

22  operandi" of doing so:

23       … we hold that a plaintiff bringing a Section 1202(b) claim must make an
    affirmative showing, such as by demonstrating a past "pattern of conduct" or
24   "modus operandi," that the defendant was aware or had reasonable grounds to be
    aware of the probable future impact of its actions.
25

26      [2] The Ninth Circuit denied the photographers' petition for panel rehearing, with all three
    judges (Judge Berzon, Judge Tashima, and Judge Payne (sitting by designation)) agreeing that
    rehearing was not warranted.  *Stevens*, 899 F.3d at 670.  Further, "The full court has been advised
27   of the petition for rehearing *en banc*, and no judge has requested a vote on whether to rehear the
    matter *en banc*."  *Id.*

28
    16

1   *Stevens*, 899 F.3d at 674.  In *Stevens*, the Ninth Circuit held that the photographers' DMCA claim

2   could <u>not</u> go forward, since the "Photographers have not offered *any* specific evidence that

3   removal of CMI [copyright management information] metadata from their real estate photographs

4   will impair their policing of infringement."  *Id.* at 675.

5          This principle applies with equal force at the motion to dismiss stage.  Judge Marshall of

6   the Central District of California granted a motion to dismiss DMCA claims pursuant to Rule

7   12(b)(6), "because a formulaic recitation of the elements of a cause of action, including

8   allegations regarding a defendant's state of mind, are not sufficient to satisfy Rule 8."  *See*

9   *Morgan v. Associated Press*, No. 15-cv-03341-CBM-JEM, 2016 WL 6953433, at *3 (C.D. Cal.

10  Mar. 16, 2016).  The Second Circuit recently upheld the dismissal, pursuant to Rule 12(b)(6), of a

11  DMCA claim brought by sports photographers against the National Football League and other

12  defendants, where the photographers alleged that the defendants removed the CMI from their

13  photographs.  The Second Circuit held that even though the complaint alleged that the defendants

14  had "removed the copyright management information from Plaintiffs' photos," that was a

15  conclusory allegation and the DMCA claim was properly dismissed.  *Spinelli v. National Football*

16  *League*, No. 17-0673-cv, __ F.3d __, 2018 WL 4309351, at *12 (2d Cir. Sept. 11, 2018).

17         Moreover, Mr. Philpot's DMCA claim is illogical.  If Alternet had indeed stripped the

18  metadata and copyright management information from his photographs, then Mr. Philpot or

19  anyone else would be unable to identify that Alternet's photograph was specifically taken by him,

20  as opposed to what must be hundreds, if not thousands, of online photographs and videos taken

21  by others, all showing Willie Nelson in performance.  The fact that Mr. Philpot pled that

22  Alternet's photograph was copied specifically from his own photograph indicates that the alleged

23  removal (if any) of his metadata and copyright management information had no effect on the

24  ability of him (or others) to identify the original source of that photograph.

25         Therefore, this Court should find that, as a matter of law, Mr. Philpot cannot state his

26  DMCA claim (Second Claim for Relief), since he did not plead the requisite knowledge on

27  Alternet's part, as required by the plain language of the statute.

28

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH

1

## VIII.   Conclusion.

2  For the foregoing reasons, this Court should dismiss Mr. Philpot's copyright infringement

3 claim for failure to state a claim, since Alternet's use of the Nelson photograph was sufficiently

4 transformative as to be covered by the fair use doctrine, so that Mr. Philpot cannot state a claim

5 for which relief can be granted.  Further, his prior sworn testimony regarding the limited purpose

6 of his photographs (to show musicians performing, not to state their political views), and that he

7 has never been paid or commissioned to take photographs, also precludes him from pleading

8 plausible facts supporting a claim for which relief can be granted.  This Court should also dismiss

9 his DMCA claim, since he did not plead the requisite knowledge on Alternet's part in order to

10 state a claim for removal or alteration of his copyright management information.

11            Respectfully submitted,

12            */s/ Jon B. Eisenberg*

13            _____

Jon B. Eisenberg, Esquire [S.B. 88278]

14            Law Office of Jon B. Eisenberg
509 Tucker Street

15            Healdsburg, CA 95448-4428
Telephone: (707) 395-0111

16            Email:  jon@eisenbergappeals.com

17            */s/ Alan R. Kabat*

18            _____
Alan R. Kabat (*pro hac vice*)

19            Bernabei & Kabat, PLLC
1400 - 16th Street, N.W., Suite 500

20            Washington, D.C.  20036-2223
tel. (202) 745-1942 (ext. 242)

21            fax (202) 745-2627
email:  Kabat@BernabeiPLLC.com

22

23 DATED:  September 19, 2018

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS: 3:18-cv-04479-TSH