UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY G. PHILPOT,<br>          Plaintiff,<br>    v.<br>ALTERNET MEDIA, INC,<br>          Defendant. | Case No. 18-cv-04479-TSH<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 19 |

## I. INTRODUCTION

Plaintiff Larry G. Philpot ("Philpot") is a photographer whose work focuses exclusively on concert events across the United States. Defendant Alternet Media, Inc. ("Alternet") operates an alternative news website and companion Facebook page where it publishes and posts original content as well as content from other sources. Philpot filed a complaint on July 24, 2018 alleging that Alternet violated the Copyright Act, 17 U.S.C. § 501 et seq., and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202 et seq., when it posted Philpot's copyrighted image of Willie Nelson with a superimposed quote on its Facebook page. Pending before the Court now is Alternet's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS in part and DENIES in part** Alternet's Motion for the following reasons.

## II. BACKGROUND

The Court accepts the following allegations as true for the purpose of resolving this Rule 12(b)(6) motion. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996).

On October 4, 2009, Philpot took a photograph of Willie Nelson in performance at Farm Aid 2009 in Saint Louis, Missouri. Compl. ¶ 8, ECF No. 1. The photograph is an original work

that is copyrighted under United States law and was registered with the United States Copyright Office on September 5, 2012 with the Certificate Number VAu 1-132-411. *Id.*

Philpot uploaded Willie Nelson's photograph on May 31, 2011 to the Wikimedia website. *Id.* ¶ 9. Philpot has been and is the sole owner of the copyright. *Id.*

Philpot made the photograph available through the website Wikimedia for reproduction, distribution, public display, public performance, and public digital performance of the photograph and derivative works, solely under and pursuant to the terms of the Creative Commons Attribution 2.0 Generic license (the "CC 2.0 License"). *Id.* ¶ 10.

On the Wikimedia website and Philpot's personal website, Willie Nelson's photograph contains copyright management information and metadata which indicate that Philpot is the author of the photograph, that the photograph must be attributed him, and that the photograph is copyrighted by him. *Id.* ¶ 12.

On or about June 3, 2015, Alternet shared a meme of Willie Nelson on its Facebook page. *Id.* ¶ 13. The Alternet posting on Facebook was introduced with the comment, "We need more values like this," and the following quote superimposed on the Nelson photograph: "Rednecks, hippies, misfits – we're all the same. Gay or straight? So what? It doesn't matter to me. We have to be concerned about other people, regardless. I don't like seeing anybody treated unfairly. It sticks in my craw. I hold on to the values from my childhood." Compl. Ex. E. Alternet did not receive permission from Philpot to post the meme, nor did Alternet provide attribution to Philpot on the post. *Id.* ¶ 13. As of the date of the Complaint, the post had 14,000 likes, 33,000 shares, and 306 comments. *Id.* ¶ 13.

On or about September 18, 2017, Philpot, through counsel, sent a cease and desist letter to Alternet but Alternet did not respond to the letter. *Id.* ¶ 17.

Philpot discovered the infringement within three years prior to filing his Complaint. Compl. ¶ 13. He claims relief for copyright infringement, 17 U.S.C. § 501 et seq., and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202 et seq.

### III. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3

## IV. DISCUSSION

### A. Copyright Infringement Claim

Alternet contends that the fair use doctrine bars, as a matter of law, Philpot's copyright claim. Congress codified the common-law doctrine of fair use in the Copyright Act of 1976, which provides that the "fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means . . . for purposes such as criticism, comment, news reporting, teaching, . . . scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. When determining whether a use constitutes a "fair use," courts consider several factors, including (1) the purpose and character of the use, including whether the use is commercial or for non-profit educational purposes, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion of the work used in relation to the work as a whole, and (4) the effect of the use on the potential market for or value of the work. *Id.; Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 576-77 (1994).

"When conducting a fair use analysis, [the Court is] not restricted to these factors; rather, the analysis is a flexible one that [the Court] perform[s] on a case-by-case basis." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 529 (9th Cir. 2008). These factors should be weighed together, "in light of the copyright law's purpose 'to promote the progress of science and art by protecting artistic and scientific works while encouraging the development and evolution of new works.'" *Id.* (citation omitted); *accord Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1163 (9th Cir. 2007).

The analysis of fair use is a mixed question of law and fact. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). Nonetheless, where appropriate a court may consider a fair use defense on a motion to dismiss. *Leadsinger, Inc.,* 512 F.3d at 530; *Adjmi v. DLT Entertainment Ltd.*, 14 Civ. 568, 2015 WL 1499575, at \*13-14 (S.D.N.Y. Mar. 31, 2015) (granting motion on the pleadings for plaintiff bringing declaratory judgment suit of non-infringement on basis of fair use based on review of the pleadings and original and allegedly fair use work); *Savage v. Council on American-Islamic Relations, Inc.,* C 07-6076 SI, 2008 WL 2951281, \*9 (N.D. Cal. Jul. 25, 2008) (dismissing copyright claim on a motion for judgment on

the pleadings because copying was protected fair use); *cf. Fisher v. Dees*, 794 F.2d 432, 435-36 (9th Cir. 1986) (finding fair use where the operative facts were undisputed or assumed; the court is to make fair use judgments, which "are legal in nature").

However, in light of a court's narrow inquiry on a Rule 12(b)(6) motion and limited access to all potentially relevant and material facts needed to undertake the analysis, it is unusual for courts to analyze fair use on a 12(b)(6) motion. *See Four Navy Seals v. Associated Press,* 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005); *cf. Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1403 (9th Cir. 1997) (noting the difficulty of assessing a fair use defense where defendants do not submit evidence on an important part of it).

### 1. The Purpose and Character of Fair Use

The first fair use factor addresses "whether the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell,* 510 U.S. at 579–80 (internal citations omitted); 17 U.S.C. § 107(1).

The main inquiry is whether the use of the Willie Nelson photo, *in the specific context used*, was transformative. *See Perfect 10, Inc.,* 508 F.3d at 1165 ("a search engine puts images *'in a different context'* so that they are 'transformed into a new creation.'") (emphasis added). Accordingly, the Ninth Circuit has consistently held that "making an exact copy of a work may be transformative so long as the copy serves a different function than the original work[.]" *Id.* (image originally used for entertainment or aesthetic purposes was transformed where defendant used the same image to facilitate use of an internet browser to locate information on the web); *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 816 (9th Cir. 2003) ("exact replication" of protected images was fair use where used in a different context from the original). On the other hand, a mere difference in purpose "does not necessarily create new aesthetics or a new work that 'alters the first work . . .'" such that it is transformative. *Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1176 (9th Cir. 2012) (citation omitted).

On this motion to dismiss, there are not enough facts alleged in the Complaint to allow the

5

Court to determine whether or not Alternet's use of the Willie Nelson photo was transformative. First of all, there are almost no allegations concerning Philpot's purpose in taking the photo. Second, it is not clear as a matter of law what Alternet's purpose was in reproducing the photo. Philpot does allege that Alternet is an alternative news website whose purpose is "to influence its readers' political leanings, and consists of opinion pieces, purportedly newsworthy information, and sensationalized current events." Compl. ¶ 7. However, taken at face value, the Court reads this to be merely a description of Alternet's operational model rather than an allegation of Alternet's purpose in using the photo.

Attached to the Complaint as an exhibit is a snapshot of the Facebook post by Alternet featuring an image of Willie Nelson with the quote: "Rednecks, hippies, misfits—we're all the same. Gay or straight? So what? It doesn't matter to me. We have to be concerned about other people, regardless. I don't like seeing anybody treated unfairly. It sticks in my craw. I hold on to the values from my childhood." Compl. Ex. E, ECF No. 1-5 at 2. Alternet argues that by adding the quote, it used the photograph to provide political commentary and that this use of the photograph supersedes Philpot's original purpose. Mot. to Dismiss, ECF No. 19 at 12.

While that is possible, at this stage of the pleadings, Philpot credibly argues that the photograph, as used by Alternet, was merely for the purpose of identifying who the quote came from, thus leaving the purpose unchanged: to identify Willie Nelson. In order to make a determination as to Philpot's argument, the Court would need additional facts. For example, whether or not Alternet's purpose in using the photograph was to identify Willie Nelson's connection to the quote or to transform it into a political poster. The latter is a factual question more appropriate for the summary judgment phase. As evident based on the above analysis, the facts, as alleged in the complaint, are simply insufficient to conduct a thorough analysis of transformative use at this time. Accordingly, this factor weighs in favor of denying dismissal.

### 2. The Nature of the Copyrighted Work

The second fair use factor looks to the nature of the plaintiff's work. 17 U.S.C. § 107(2). This factor has been described as "not . . . terribly significant in the overall fair use balancing," *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) (citation

and quotation marks omitted); *Campbell,* 510 U.S. at 586 (noting that the second factor was "not much help" in the parody context). Philpot concedes in his opposition that his photograph was previously published, however, he also emphasizes that the image's creativity is what sets the photo apart. Opp'n to Mot., ECF No 24 at 12. In order to make a determination as to the image's unique creativity, the Court requires a factual inquiry that is inappropriate at this stage, weighing this factor against dismissal.

### 3. The Amount and Substantiality of the Portion of the Work Used in Relation to the Work as a Whole

"The third factor asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Campbell,* 510 U.S. at 586 (quoting 17 U.S.C. § 107(3)). The Ninth Circuit has held that the reuse of an entire image may be reasonable if it serves the defendant's intended purpose. *See Perfect 10, Inc.,* 508 F.3d at 1166 (use of entire image necessary to facilitate use of search engine).

Here, Philpot alleges that Alternet used the entire photograph, which is the copyrighted work. However, to evaluate the third factor requires comparing the amount of the work used to the purpose of the copying. As noted above, this overlaps with the first fair use factor, which cannot be decided on the pleadings. Accordingly, the third factor is also unsuitable for resolution on the pleadings.

### 4. The Effect of the Use on the Potential Market for or Value of the Work

The fourth and final statutory factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Evaluation of this factor considers both the extent of the market harm caused by the alleged infringer's conduct and the adverse impact on the potential market for the original if this conduct were unrestricted. *Campbell,* 510 U.S. at 590. The more transformative the new work, the less likely the new work's use of copyrighted materials will affect the market for the materials. *Elvis Presley Enters., Inc.v. Passport Video*, 349 F.3d 622, 631 (2003), *overruled on other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011).

Philpot argues that discovery about the relevant market would be necessary to resolve this

factor. Opp'n to Mot. at 13. Alternet argues that because the use was transformative, the operative market would be different thereby making the effect on the original market for Willie Nelson photographs minimal. Reply in Support of Mot. at 7. The Court agrees with Philpot on this factor because Alternet's argument is based on evidence outside the scope of a motion to dismiss, such as sworn testimony given by Philpot in previous proceedings.[1] Furthermore, Alternet's reliance on *Philpot v. Media Research Center, Inc.*, is misguided as that decision was rendered at the summary judgment phase when the parties had a chance to conduct discovery. 279 F. Supp. 3d 708 (E.D. Va. 2018). Accordingly, "it is impossible to deal with the fourth factor except by recognizing that a silent record on an important factor bearing on fair use" makes adjudicating the defense at this stage inappropriate." *Campbell*, 510 U.S. at 594.

For all the reasons stated above, the Court **DENIES** Alternet's motion to dismiss Philpot's copyright infringement claim.

**B.     Digital Millennium Copyright Act**

A defendant must possess the mental state of knowing, or having reasonable grounds to know, that his actions will induce, enable, facilitate, or conceal infringement to be liable for removing copyright management information (CMI) metadata and distributing images knowing that CMI was removed under 17 U.S.C. § 1202(b). The Ninth Circuit has held "that a plaintiff bringing a Section 1202(b) claim must make an *affirmative showing*, such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Stevens v. Corelogic, Inc*., 899 F.3d 666, 674 (9th Cir. 2018) (emphasis added).

Philpot argues that the complaint sufficiently pled Alternet's mental state by stating that

---

[1] Alternet states in a footnote in its motion to dismiss that judicial notice of filings and decisions in Philpot's other copyright infringement lawsuits would be appropriate. However, Alternet submits no formal request for judicial notice. Regardless, Alternet does not explain what, if anything, the Court is supposed to infer from Philpot's 73 prior lawsuits except that he appears to be litigious. And as to his deposition testimony, the Ninth Circuit has explained that "[t]he accuracy of . . . deposition excerpts . . . could be subject to reasonable dispute," and are therefore generally not subject to judicial notice. *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007).

Alternet should have known its alleged removal of the CMI of Willie Nelson's photograph would induce, enable, facilitate, or conceal an infringement of Philpot's rights. Opp'n to Mot. at 14. However, the Court finds that argument to be merely conclusory. As previously stated, a complaint must contain "factual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted). On this claim, Philpot fails to plead any facts showing that Alternet had the required mental state. Accordingly, the Court **GRANTS** the Defendant's motion to dismiss the Philpot's Digital Millennium Copyright Act claim.

## V. CONCLUSION

For the reasons stated above, the Court orders as follows:

(1) Alternet's motion to dismiss as to Philpot's copyright infringement claim is **DENIED.**

(2) Alternet's motion to dismiss as to Philpot's Digital Millennium Copyright Act claim is **GRANTED WITH LEAVE TO AMEND.** Philpot has thirty (30) days from the date of this order to amend his complaint.

**IT IS SO ORDERED.**

Dated: November 30, 2018

_____
THOMAS S. HIXSON
United States Magistrate Judge

9